**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICAH DORN and PETER HARALOVICH, | ) | |
| individually and as representatives of all | ) | |
| similarly situated persons, | ) | |
| | ) | No.: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiffs, MICAH DORN and PETER HARALOVICH, for themselves and all similarly situated people, by the undersigned counsel, state for their Complaint against VOLKSWAGEN GROUP OF AMERICA, INC., as follows:

1. Since at least 2009 and until the present Volkswagen Group of America, Inc., ("Volkswagen") has manufactured and sold cars in the United States with diesel engines installed in various model cars, including the Jetta, the Beetle, the Audi A3, the Golf and the Passat models.

2. The engines in these model cars were marketed as a "TDI® clean diesel engine." They were not clean.

3. Federal law, specifically the Clean Air Act, 42 U.S.C. §§ 7401-7671q, and its implementing regulations, administered by the Environmental Protection Agency ("EPA"), requires automobile manufacturers to install emission control devices to ensure that each diesel vehicle sold in the U.S. complies with Clean Air Act emission standards during operation, and to certify that such devices have been installed and are operative and that they meet the standards.

4.      Between 2009 and the present Volkswagen installed software that allowed the engine control unit in the diesel engine installed in the Jetta, the Jetta Sportwagen, the Golf, the Audi A3, the Beetle, the Beetle Convertible, the Passat, and the Golf Sportwagen to detect when the car was undergoing an emissions test (the "Affected Vehicles").

5.      Volkswagen sold at least 482,000 Affected Vehicles in the U.S. since 2009.

6.      When the software in the Affected Vehicles' Electronic Control Module ("ECM") detects environmental and vehicle parameters that resemble an emissions test, the ECM activates the pollution control devices installed on the car to enable an emissions test to be passed.

7.      Volkswagen intentionally effected this result by using a "defeat device" that it did not describe to the EPA in the Certificate of Conformity application that it submitted to the EPA. Automobiles equipped with "defeat devices" cannot be certified by the EPA, and are illegal to sell in the U.S.

8.      Thus, when the ECM software does not report that the car is undergoing an emissions test, the emission control devices required by the U.S. Clean Air Act are wholly or partially turned off and bypassed.  The result is that under normal driving conditions the federally required pollution control devices that control emissions from the "TDI® clean diesel engine" are inoperative or greatly impaired.  The EPA has found that this "defeat device" allows between 10 and 40 times the allowed level of nitrous oxide to be emitted from the Affected Vehicles, depending on the type of drive cycle (i.e., city or highway driving).  Nitrous oxide is a reactive gas that reacts with volatile organic compounds in the atmosphere to produce ozone on hot summer days which, in turn, is a health hazard, and its emission is regulated by the EPA.

9.      The result is that the Affected Vehicles routinely emit pollution far in excess of that allowed by the Clean Air.

2

10.     Another result is that fuel mileage increases in ways that it would not if the required emission control devices were fully operative.

11.     Volkswagen marketed these diesel cars as containing a "TDI® clean diesel engine." Volkswagen also marketed these diesel cars as "clean" and "green" cars. These were false representations on which the public, including Mica Dorn and Peter Haralovich, relied, in deciding whether to purchase a diesel engine vehicle.

12.     Volkswagen has been ordered by the EPA to recall the above described vehicles and repair them so that they comply with emissions requirements during normal operation.

13.     Volkswagen will not be able to make the above described vehicles comply with emissions standards without substantially degrading their horsepower and efficiency.

14.     Even if Volkswagen is able to comply with the EPA order, Dorn, Haralovich and Class Members will suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and will not perform as advertised. This will result in a diminution in value of every Affected Vehicle and it will cause owners to pay more for fuel while using their vehicles.

15.     Further, Dorn and Haralovich and the class did not receive the "TDI® clean diesel engine" they bargained for due to the false statement and/or fraudulent misrepresentation of Volkswagen. Nor did they received a "green" or "clean" car.

16.     As a result of Volkswagen's unfair, deceptive and/or fraudulent business practices, and its failure to disclose that under normal operating conditions that its diesel engines emitted up to 40 times the allowed emission levels of regulated gasses, owners and/or lessees of the above mentioned model cars have suffered losses in money and/or property and will continue to do so.

## JURISDICTION

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists because Plaintiffs and many Class Members are citizens of a State different from that of the Defendant.

18.     Venue is proper in this District under 28 US.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this district.  Plaintiff Dorn resides in this District and Volkswagen has advertised, marketed, sold and leased the Affected Vehicles within this District.

## PARTIES

19.     The Defendant, Volkswagen Group of America, Inc., is a New Jersey corporation, with its principal place of business located in Herndon, Virginia.  It does business in all 50 states and in the District of Columbia.  At all relevant times Volkswagen designed, manufactured, imported, distributed, sold, warranted, advertised and marketed the Affected Vehicles with the "TDI® clean diesel engine" that contained a secret "defeat device" in the ECM software.

20.     Plaintiff Micah Dorn is an individual residing in Cook County, Illinois.  In March 2013 he purchased a new 2013 Volkswagen Jetta with a "TDI® clean diesel engine"  from Fletcher Jones Volkswagen, an authorized Volkswagen dealer in Chicago, Illinois.  Dorn still owns this vehicle.

21.     Plaintiff Peter Haralovich is an individual residing in Monroe County, Indiana.  In February 2011 he purchased a new 2010 Volkswagen Jetta with a "TDI® clean diesel engine"

from Royal Volkswagen of Bloomington, Indiana, an authorized Volkswagen Dealer. Haralovich still owns this vehicle.

22.     The vehicles purchased by Dorn, Haralovich, unknown to them, at the time they purchased their vehicles, were equipped with an emissions control "defeat device" which caused the vehicles to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including nitrous oxide. The use of the "defeat device" by Volkswagen has caused Plaintiffs out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiffs, so Plaintiffs purchased their vehicles on the reasonable, but mistaken, belief that they complied with United States emissions standards, was properly EPA certified, and would retain all of their operating characteristics throughout their useful life.

23.     Both Dorn and Haralovich Plaintiff selected and ultimately purchased their vehicles, in part, because of the "TDI® clean diesel engine," as represented through advertisements and representations made by Volkswagen. Specifically, prior to their purchases of the vehicle, both Dorn and Haralovich viewed television advertisements regarding the "TDI® clean diesel engine." Haralovich was aware that the *Green Car Journal* awarded the 2009 Volkswagen "TDI® clean diesel" the "green car of the year award," an award that would not have been earned but for Volkswagen's deception of the EPA and concealment of material fact. Both Dorn and Haralovich were told by the authorized Volkswagen dealer that they purchased their vehicles from that the vehicle was a low emission, high mileage "green" automobile. Both Dorn and Haralovich recall that Volkswagen advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the

5

advertisements reviewed or representations received by Plaintiffs contained any disclosure relating to the "defeat device" or that Volkswagen had purposefully falsified its certification of EPA compliance. Had Volkswagen disclosed that the "TDI® clean diesel engine" in Dorn and Haralovich's vehicle actually emitted up to 40 times the permitted levels of pollutants, including nitrous oxide, neither Dorn or Haralovich would have purchased their Affected Vehicle, or would have much paid less for the vehicle, if it could even have been legally marketed.

24.     Plaintiff Dorn and Haralovich have suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the "TDI® clean diesel engine," including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished value. Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the "defeat device" and/or defective design of the "TDI® clean diesel engine" prior to purchase.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment Tolling

25.     Volkswagen intentionally designed the "defeat device" into the software of the ECU's in the Affected Vehicles. The EPA has described the device as a "sophisticated software algorithm" that detects when the vehicle in undergoing an emissions test.

26.     The defeat device was not discoverable by the Plaintiffs or class. The EPA began investigating emissions problems in certain of the Affected Vehicles in 2014. When the EPA contacted Volkswagen about the issue Volkswagen misled the EPA claiming that the high emissions results were attributable to various technical issues and unexpected in-use conditions. Only when the EPA and California Air Resources Board persisted did Volkswagen admit, in 2015, that "it had designed and installed a defeat device in these vehicles in the form of a sophisticated software algorithm that detected when a vehicle was undergoing emissions testing."  (EPA

6

September 18, 2015 letter to Volkswagen, http://www3.epa.gov/otaq/cert/documents/vw-nov-caa-09-18-15.pdf (last viewed 9-21-15)).

27.     Plaintiffs and the Class could not have discovered that Volkswagen was concealing its deception or fraud through the exercise of reasonable diligence within any applicable period of limitation.

28.     Nor did Plaintiffs and the Class know, and they could not have learned through the exercise of reasonable diligence, that Volkswagen had misled the EPA and falsely certified the required Certificate of Compliance as to each model of the Affected Vehicles.

29.     Nor did Plaintiffs and the Class know, and they could not have learned through the exercise of reasonable diligence, that Volkswagen had falsely advertised, marketed and warranted the engine system in the vehicles as a "TDI® clean diesel engine" when the fact was that it was an illegally dirty engine.

30.     Any applicable statute of limitation has therefore been tolled by Volkswagen's knowledge, active concealment, and denial of the facts alleged herein.

**Estoppel**

31.     Volkswagen was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the vehicles.  Volkswagen actively concealed the true character, quality, and nature of the vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles.  Plaintiffs and Class Members reasonably relied upon Volkswagen's knowing and affirmative misrepresentations and/or active concealment of these facts.  Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitation in defense of this action.

**Discovery Rule**

32.     The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their vehicles had an illegal "defeat device."

7

33.     However, Plaintiffs and Class Members had no realistic ability to discern that the vehicles were defective until—at the earliest—September 18, 2015 when the EPA Notice of Violation became public.

34.     Therefore, Plaintiffs and Class's causes of action did not accrue until September 18, 2015.

## CLASS ACTION ALLEGATIONS

35.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and issues on behalf of a Class defined as:

**Nationwide Class**
All persons or entities in the United States and District of Columbia who purchased or leased –

> 2009 model year VW Jetta and VW Jetta Sportwagen;
> 2010 model year VW Golf, VW Jetta, VW Jetta Sportwagen, and Audi A3;
> 2011 model year VW Golf, VW Jetta, VW Jetta Sportwagen, and Audi A3;
> 2012 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta
> VW Jetta Sportwagen, Audi A3 and VW Passat;
> 2013 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta
> VW Jetta Sportwagen, Audi A3 and VW Passat;
> 2014 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta
> ,VW Jetta Sportwagen, Audi A3 and VW Passat; and/or
> 2015 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta,
> Audi A3 and VW Passat

that contained a "TDI® clean diesel engine."

**Illinois subclass**
All persons or entities in Illinois who purchased or leased–

> 2009 model year VW Jetta and VW Jetta Sportwagen;
> 2010 model year VW Golf, VW Jetta, VW Jetta Sportwagen, and Audi A3;
> 2011 model year VW Golf, VW Jetta, VW Jetta Sportwagen, and Audi A3;
> 2012 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta,
> VW Jetta Sportwagen, Audi A3 and VW Passat;
> 2013 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta,
> VW Jetta Sportwagen, Audi A3 and VW Passat;

2014 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 and VW Passat; and/or
2015 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, Audi A3 and VW Passat

that contained a "TDI® clean diesel engine."

**Indiana subclass**
All persons or entities in Indiana who purchased or leased–

2009 model year VW Jetta and VW Jetta Sportwagen;
2010 model year VW Golf, VW Jetta, VW Jetta Sportwagen, and Audi A3;
2011 model year VW Golf, VW Jetta, VW Jetta Sportwagen, and Audi A3;
2012 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 and VW Passat;
2013 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 and VW Passat;
2014 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, ,VW Jetta Sportwagen, Audi A3 and VW Passat; and/or
2015 model year VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, Audi A3 and VW Passat

that contained a "TDI® clean diesel engine."

36.     Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

37.     Excluded from the Class are governmental entities, Defendant and Defendant's officers, legal representatives, employees, subsidiaries and assigns.  Also excluded from the Class is any judge, magistrate or judicial officer presiding over this matter, and the members of their immediate families and judicial staff.

**Numerosity and Ascertainability**

38.     The nationwide and statewide classes and/or subclasses are each too numerous for individual joinder of all their members to be practicable as half a million Affected Vehicles were sold in the U.S. between 2009 and 2015.  Although the exact number of Class Members is uncertain

9

and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are readily identifiable from information and records in Volkswagen's possession, custody, or control.

## Typicality

39. The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, purchased or leased a Volkswagen Affected Vehicle designed, manufactured, marketed and distributed by Defendants. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they will incurred costs and loss of value relating to the "defeat device." Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

## Adequate Representation

40. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective automotive products.

41. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

## Predominance of Common Questions

42. There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include:

a.    whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

b.    whether the Affected Vehicles contained a "defeat device" designed to allow the vehicle to pass emissions tests but to violate emissions standards at other times;

c.    whether Defendant concealed the "defeat device";

d.    whether the Defendant falsely marketed the Affected Vehicles as "green" or "clean diesels";

e.    whether any fix attendant on a recall will result in reduced value of the Affected Vehicles;

f.    whether any fix attendant on a recall will result in higher fuel consumption;

g.    whether any fix attendant on a recall will reduce the horsepower of the Affected Vehicles;

h.    whether Defendant omitted and failed to disclose material facts about the Affected Vehicles;

i.    whether Defendant's concealment of the true defective nature of the Affected Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing the Affected Vehicles;

j.    Whether Plaintiffs and the other Class members overpaid for their Affected Vehicles;

k.    whether Defendant violated the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*;

l.    whether Defendant violated the Indiana Deceptive Consumer Sales Act, I.C. 24-5-0.5 *et seq.*;

11

m.       whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability; and

n.       Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

43.    Defendants have acted in a uniform manner with respect to the Plaintiffs and Class Members.  Each Affected Vehicle is defective in the same way, Defendant misrepresented each Affected Vehicle in the ways described herein, and the Plaintiffs and Class Members are and will be damaged in similar ways.

44.    The claims asserted by Plaintiffs are typical of the claims of the members of the Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

45.    The Class is manageable because the Defendants keep records on sale for purposes of issuing recall notices.  Identifying Class members and resolving common liability questions will therefore be manageable.

46.    The Plaintiffs will fairly and adequately represent and protect the interest of the class.

47.    Plaintiff and his counsel can fairly and adequately represent the class.

48.    There are no individual questions of liability.

49.    Allowing the prosecution of these claims as separate actions would create the risk the establishment of incompatible standards of conduct being imposed on Defendants; would risk needlessly duplicative results and protracted proceedings; and is inappropriate because common

12

questions of law or fact predominate over questions affecting only individual members of the Class.

## COUNT I – COMMON LAW FRAUDULENT CONCEALMENT
### (Nationwide Class)

1.-49. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 49 above as paragraphs 1 through 49 of Count I as if fully set forth herein.

50.     Volkswagen intentionally designed the "defeat device" to circumvent the requirement of the Clean Air Act, and falsely certified to the EPA that the Affected Vehicles were in compliance with those requirements.

51.     At the same time, between 2009 and the present, Volkswagen intentionally marketed and advertised the Affected Vehicles as "green" or "clean" and described the engine as a "clean diesel."

52.     Plaintiffs and the Class reasonably relied on the representations that Volkswagen made in brochures, its website, advertisements, and in the owner's manual, in believing that they were paying a premium for a fuel efficient "clean" automobile with a "TDI® clean diesel engine."

53.     Plaintiffs and the Class did not know, and had no way of knowing, that the representations of Volkswagen were false.

54.     Volkswagen had a duty to disclose the true facts about the Affected Vehicles to potential and actual customers, and in addition to the EPA.

55.     Volkswagen breached its duties to profit at the expense of the Plaintiffs, the Class, and the public who put at risk from illegally elevated nitrous oxide emissions.

56.     Had the Plaintiffs and the Class known the true facts regarding the Affected Vehicles, they would not have purchased the vehicles.  In fact, had Volkswagen disclosed the true

13

facts to the EPA the Affected Vehicles that the Plaintiffs and Class own could not have been sold to them.

57.     Volkswagen's fraudulent concealment and suppression of the true facts regarding the Affected Vehicles has damaged the Plaintiffs and Class in many ways.  Plaintiffs and the Class were fraudulently induced to purchase that which they would not have.  Plaintiffs and the Class were charged a premium by Volkswagen for a fuel efficient and "clean" automobile.  Plaintiffs and the Class now own vehicles that have lost value, will cost money to fix, and which may not even be saleable.

58.     Volkswagen is therefore liable to Plaintiffs and the Class for all damages they incurred and will incur.

WHEREFORE, Plaintiffs and the members of the Class respectfully pray that:

1.     The Court certify this action as a Class action under Federal Rule of Civil Procedure 23(b)(3);

2.     That the Plaintiffs and the Class be awarded compensatory damages for the value of the property or property rights that they were wrongfully deprived of;

3.     That the Plaintiffs be awarded reasonable attorney's fees and costs.

Plaintiffs and the Class demand trial by jury.

## COUNT II – ILLINOIS CONSUMER FRAUD
### (Illinois Subclass)

1.-49. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 49 above as paragraphs 1 through 49 of Count II as if fully set forth herein.

50.     This Count is brought on behalf of Plaintiff Micah Dorn and the Illinois Class.

51.     Defendant, Plaintiff and the Illinois Class are "persons" within the meaning of 815 ILCS 505/1 (c).

52.     Plaintiffs and the Illinois Class are "consumers" within the meaning of 815 ILCS 505/1 (e).

53.     Defendant engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1 (f).

54.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

55.     Defendant sold Affected Vehicles in Illinois and throughout the United States during the Class Period.

56.     Defendant's sales of Affected Vehicles within Illinois and throughout the United States meet the definition of "sale" within the meaning of 815 ILCS 505/1 (d).

57.     The Affected Vehicles constitute "merchandise" within the meaning of 815 ILCS 505/1 (b).

58.     Defendant's advertisements and inducements made within Illinois and throughout the United States come within the definition of "advertisements" as contained in 815 ILCS 505/1 (a).

59.     Defendant violated the ICFDBPA when they represented, through advertising, warranties, and other express representations, that the Affected Vehicles had characteristics and

15

benefits that they did not actually have.

60.    Defendant violated the ICFDBPA when they falsely represented, through advertising, warranties, and other express representations, that the Affected Vehicles were of certain quality or standard when they were not.

61.    Defendant violated the ICFDBPA by fraudulently concealing from and/or failing to disclose to Plaintiffs and the Illinois Class the defects associated with the Affected Vehicles.

62.    Defendant violated the ICFDBPA by actively misrepresenting in, and/or concealing and omitting from, their advertising, marketing, and other communications, material information regarding the Affected Vehicles.  The material information included:

      a.    that the Affected Vehicles were "green,"  "clean" and that the vehicles had "TDI® clean diesel engine"; and

      b.    that the Affected Vehicles complied with the Clean Air Act and EPA regulations.

63.    Defendant intentionally and knowingly misrepresented and/or concealed material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Illinois Class.

64.    The deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission of material facts alleged in the preceding paragraphs occurred in connection with Defendant's conduct of trade or commerce in Illinois and throughout the United States.

65.    Defendant's deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission caused Plaintiff and the Class to purchase said vehicles that they would otherwise not have purchased had they known the true nature of these products.

66.    As a result of Defendant's unlawful business practices, Plaintiff and the Class, pursuant to 815 ILCS 505/10a are entitled to an order enjoining such future conduct and such other

16

orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiff and any Class member any money paid for said vehicles.

WHEREFORE, Plaintiffs and the members of the Class respectfully pray that:

1.      The Court certify this action as a Class action under Federal Rule of Civil Procedure 23 (b)(3);

2.      That the Plaintiff and the Class be awarded compensatory damages for the value of the property or property rights that they were wrongfully deprived of and all related emotional distress caused by Defendant's intentional conduct;

3.      That the Plaintiffs and the Class be awarded punitive damages;

4.      That the Plaintiffs be awarded reasonable attorney's fees and costs.

Plaintiff and the Class demand trial by jury.

## COUNT III – INDIANA DECEPTIVE SALES ACT CLAIM
### (Indiana Subclass)

1.-49. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 49 above as paragraphs 1 through 49 of Count II as if fully set forth herein.

50.      This Count is brought on behalf of Plaintiff Peter Haralovich and the Indiana Class.

51.      Defendants, Plaintiff and the Indiana Class are "persons" within the meaning of I.C. § 24-5-0.5-2.

52.      Plaintiff and the Indiana Class are "consumers" within the meaning of I.C. § 24-5-0.5-2.

53.      Defendants engaged in "suppliers" within the meaning of I.C. § 24-5-0.5-2.

54.      Section 3 of the Indiana Deceptive Consumer Sales Act, I.C. § 24-5-0.5-3, provides in pertinent part:

Sec. 3. (a) A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations.

(b) Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts:

(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.

(2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

55.     Defendant sold Affected Vehicles in Indiana and throughout the United States during the Class Period.

56.     Defendant's sales of Affected Vehicles within Indiana and throughout the United States meet the definition of a "consumer transaction" within the meaning of I.C. § 24-5-0.5-2.

57.     Defendant's advertisements and inducements made within Indiana and throughout the United States come within the definition of "advertisements" as contained in 815 ILCS 505/1 (a).

58.     Defendant violated the Indiana Deceptive Sales Act when it represented, through advertising, warranties, and other express representations, that the Affected Vehicles had characteristics and benefits that they did not actually have.

59.     Defendant violated the Indiana Deceptive Sales Act when it falsely represented, through advertising, warranties, and other express representations, that the Affected Vehicles were of certain quality or standard when they were not.

18

60.     Defendant violated the Indiana Deceptive Sales Act by fraudulently concealing from and/or failing to disclose to Plaintiff and the Indiana Class the defects associated with the Affected Vehicles.

61.     Defendant violated the Indiana Deceptive Sales Act by actively misrepresenting in, and/or concealing and omitting from, their advertising, marketing, and other communications, material information regarding the Affected Vehicles.  The material information included:

    a.  that the Affected Vehicles were "green,"  "clean" and that the vehicles had "TDI® clean diesel engine"; and

    b.  that the Affected Vehicles complied with the Clean Air Act and EPA regulations.

62.     Defendant intentionally and knowingly misrepresented and/or concealed material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Indiana Class.

63.     The deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission of material facts alleged in the preceding paragraphs occurred in connection with Defendant's conduct of trade or commerce in Indiana and throughout the United States.

64.     Defendant's deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission caused Plaintiff and the Class to purchase said vehicles that they would otherwise not have purchased had they known the true nature of these products.

65.     The Defendant's deception is incurable.

66.     As a result of Defendant's deceptive business practices, Plaintiff and the Class, pursuant are entitled to compensation for all losses and their attorney's fees and costs.

WHEREFORE, Plaintiffs and the members of the Class respectfully pray that:

1.     The Court certify this action as a Class action under Federal Rule of Civil Procedure 23 (b)(3);

2.     That the Plaintiff and the Class be awarded compensatory damages for the value of the property or property rights that they were wrongfully deprived of and all related emotional distress caused by Defendant's intentional conduct;

3.     That the Plaintiffs be awarded reasonable attorney's fees and costs.

Plaintiff and the Class demand trial by jury.


CLIFFORD LAW OFFICES, P.C.

/s/     Robert A. Clifford

Robert A. Clifford
Shannon M. McNulty
Edward R. Moor
Clifford Law Offices, P.C.
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
312-899-9090
rac@cliffordlaw.com
smm@cliffordlaw.com
erm@cliffordlaw.com